IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ENOCH WILDER**, )
)
      Plaintiff, )
)
V. ) Civil No. **04-874-DRH**
)
**RICK SUTTON, et al.**, )
)
      Defendants. )

# REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

    Defendants Rick Sutton, Julius Flagg, Mark Pierson, John Evans and Melody Ford are before the Court seeking summary judgment pursuant to Federal Rule of Civil Procedure 56. **(Doc. 40).** Defendant William Watts has filed a virtually identical motion for summary judgment. **(Doc. 43).** Plaintiff Enoch Wilder filed a response to the first-mentioned motion **(Doc. 45)**, but he did not file a response to the second-mentioned motion. Out of fairness to plaintiff, because the two motions for summary judgment raise identical arguments, and given that at the time plaintiff filed his response both motions had been received by plaintiff, that response will be considered as to both motions for summary judgment. The defendants filed a reply, which will also be considered by the Court. **(Doc. 46).**

    This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

1

## Plaintiff's Claims

Plaintiff Enoch Wilder is in the custody of the Illinois Department of Corrections, housed at all relevant times at Pinckneyville Correctional Center. On November 30, 2004, plaintiff filed a civil rights complaint initiating this action. **(Doc. 1).** Plaintiff subsequently filed an amended complaint, which is controlling at this juncture. **(Doc. 21).** Plaintiff, a practitioner of the Wiccan religion, alleges that the defendant prison officials have: (1) impeded the practice of his religion in violation of the First Amendment; (2) denied him his equal protection rights insofar as they have placed burdens on his religious practice not applicable to other religions, in violation of the Fourteenth Amendment; (3) thereby violated the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1); and (4) thereby committed negligence under Illinois law. **(Doc. 21).**

As previously summarized by the Court, the relevant facts are as follows:

> Plaintiff states that he was transferred to Pinckneyville Correctional Center on January 10, 2003. At the time of transfer, he identified himself as a practitioner of the Wiccan religion. Plaintiff submitted "request slip after request slip" seeking a meeting with Defendant Sutton so that he might obtain the materials necessary for the practice of his religion. Plaintiff informed Defendant Flagg, Assistant Warden of Programs, that Defendant Sutton had not responded to his requests. Defendant Flagg told him to keep submitting requests. After a few more weeks of his requests being ignored, Plaintiff wrote an unspecified number of letters to Defendant Pierson, Chief Administrative Officer at Pinckneyville Correctional Center, informing him of his desire to practice his religion and Defendant Sutton's failure to respond to his requests. Defendant Pierson did not respond in writing to Plaintiff's requests, but when Plaintiff saw him in person and asked him about his letters, Defendant Pierson told Plaintiff, "you must go through the Chaplaincy Department."
> Because Plaintiff believed he had no other recourse, on November 19, 2003, he began filing grievances. In response, he was informed that he needed to submit a documented list of necessary items to Defendant Sutton. Plaintiff did so, but that request was also ignored. Plaintiff later saw Defendant Sutton, asked about the requests, and was informed that "your religion is not allowed to be practiced at PCC." Defendant Sutton also told Plaintiff that his request[s] were

being reviewed by Defendant Watts, Chief Chaplain of the Religions Practice Advisory Board in Springfield. After "a long period of time elapsed" without response from either Defendant Sutton or Defendant Watts, Plaintiff wrote a letter to Defendant Watts personally, asking that he be allowed to practice his religion. During this same time, Plaintiff was also seeking relief through the prison's grievance system. All grievances were denied for various reasons at the prison level and later by Defendant Evans and Defendant Ford at the Administrative Review Board.

**(Doc. 8, pp. 2-3).**

## Arguments for Summary Judgment

The defendants argue that:

1. The relevant prison policies regulating the practice of religion are based on a logical, compelling governmental interest in maintaining prison security;

2. The evidence shows that there has not been any actionable religious discrimination, in that the defendants were each performing their duties in a religiously neutral manner, in compliance with prison policies;

3. Plaintiff has failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a);

4. Defendants Pierson and Evans lack sufficient personal involvement for liability to attach;

5. The defendants are entitled to qualified immunity; and

6. In accordance with the Eleventh Amendment, the defendants are immune from money damages insofar as they are sued in their official capacities.

## Analysis

The defendants' argument that plaintiff has failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a) is well taken. Because the exhaustion of administrative remedies is a precondition to suit, none of the other arguments need be analyzed. If this Report and Recommendation is not adopted, the defendants' other arguments for summary

3

judgment will be analyzed and another Report and Recommendation will be issued.

## Applicable Legal Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986);** *Spath v. Hayes Wheels Int'l-Ind., Inc.,* **211 F.3d 392, 396 (7th Cir. 2000).** In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986);** *Spath,* **211 F.3d at 396.**

Exhaustion of administrative remedies in accordance with 42 U.S.C. § 1997e(a), while not jurisdictional per se, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. *Woodford v. Ngo,* **548 U.S. 81, ----, 126 S.Ct. 2378, 2382-2383(2006);** *Booth v. Churner*, **532 U.S. 731, 739 (2001)***; Pozo v. McCaughtry,* **286 F.3d 1022, 1025 (7th Cir. 2002);** *Perez v. Wisconsin Department of Corrections*, **182 F.3d 532 (7th Cir. 1999).**

"Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." *Massey v. Helman*, **196 F.3d 727, 735 (7th Cir. 2000).** "Defendants may waive or forfeit reliance on [42 U.S.C.] § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." *Perez,* **182 F.3d at 536.**

The rules governing the filing and prosecution of a grievance, including the appeal, must

4

be followed to achieve exhaustion; substantial compliance is insufficient. ***Lewis v. Washington* 300 F.3d 829, 833-834 (7th Cir. 2002).** When prison officials fail to respond to an inmate grievance that remedy is considered exhausted because it has been rendered "unavailable." ***Id.*** Similarly, a remedy that prison officials impede a prisoner from using is "unavailable." ***Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Dole v. Chandler*, 438 F.3d 804, 811-812 (7th Cir. 2006).**

The grievance procedures applicable to the Illinois Department of Corrections are set forth under Title 20 of the Illinois Administrative Code, Section 504.800 *et seq*. A grievance must be initiated within 60 days after the incident is discovered. The grievance must set forth the "who, what, when and where" of the incident at issue. Basically, an inmate first takes his complaint to a correctional counselor; if this does not resolve the problem, he is to file a written grievance on an institutional form, which is then reviewed by a designated grievance officer. The grievance officer reports his or her findings and recommendations "promptly" to the chief administrative officer, i.e., the warden, and the warden advises the inmate of the institutional decision within two months of receipt of the grievance. In an emergency, an inmate may send his grievance directly to the warden. If the warden determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance is to be decided on an expedited basis. The inmate may appeal the warden's disposition of the grievance in writing to the director of the Department of Corrections within 30 days of the warden's decision. The director reviews the grievance and the responses of the grievance officer and warden, and determines whether the grievance requires a hearing before the Administrative Review Board. If it is determined that the grievance is meritless or can be resolved without a

5

hearing, the director will issue a final decision; otherwise, the grievance is referred to the Administrative Review Board, which may hold hearings and examine witnesses. The Board submits a written report of its findings and recommendations back to the director, who than makes a final determination within six months. When an emergency grievance is appealed, the Administrative Review Board is supposed to expedite review. *See* **20 Ill.Adm.Code § 504.810-850 (2003).** (*See also* **Doc. 46-2, pp. 1-2 (affidavit of IDOC Administrative Review Chairman Brian Fairchild outlining grievance procedures).**

## Analysis

The defendants contend that plaintiff failed to complete the full grievance and appeal process.

According to plaintiff, upon arrival at Pinckneyville Correctional Center in January 2003, he orally and via "request slip" tried to speak to Chaplain Sutton to go about practicing his religion. **(Doc. 21, p. 5).** Those efforts were fruitless, so on November 19, 2003, plaintiff lodged a grievance regarding not being permitted to use "ritual utensils" to practice his religion. That initial grievance was ultimately passed through the entire institutional chain– to a counselor on December 1, 2003, then to a grievance officer on March 15, 2004, and on to the warden on March 17, 2004. **(Doc. 40-5, pp. 8-11).** The timing of the submission of the grievance to the grievance and efforts to appeal that denial will prove fatal to plaintiff's lawsuit.

The counselor's December 1, 2003, response stated: "Per Chaplain Sutton, you must provide a complete list of what you need along with verification (documentation) in order for these [religious practice] items to be used in your worship." **(Doc. 40-5, p. 5).** Accordingly, plaintiff secured a letter dated December 22, 2003, from the Rowan Tree Church, listing various

6

items "considered very desirable," "very important," or "desirable" in religious ceremonies. **(Doc. 45-2, p. 10).**

In keeping with IDOC and institutional procedures **(Doc. 40-2, p. 12 (20 Ill. Admin. Code § 425.110))**, plaintiff submitted the December 22, 2003, list of ritual items to Chaplain Sutton, who, also in accordance with the aforementioned procedure, forwarded the list to the Religious Practice Advisory Board (RPAB), which is charged with reviewing and making recommendations regarding requests for religious items. **(*See* Doc. 40-2, p. 6 (20 Ill. Admin. Code § 425.40); and Doc. 40-2, pp. 1-2 (affidavit of Chaplain Sutton)).** The RPAB <u>never</u> made a recommendation. **(Doc. 40-6, p. 7 (Deposition p. 30)).** In any event, given the chronology of events, it is obvious that the November 19, 2003, grievance was premature, as the counselor's response suggested; in that plaintiff had not even properly requested ritual items until after that date.

On or about February 9, 2004, plaintiff sent a copy of his November 19, 2003, grievance to the Administrative Review Board. The Administrative Review Board returned the grievance, noting that plaintiff had failed to include the counselor's, grievance officer's and chief administrative officer's respective responses. **(Doc. 40-5, pp. 5-7; Doc. 40-5, pp. 1-4).** According to plaintiff, he was merely sending a copy of his grievance to the RPAB to illustrate his efforts to secure permission to practice his religion, but the grievance somehow made its way to the Administrative Review Board (ARB); in other words, plaintiff never intended to appeal his November 19, 2003, grievance. **(*See* Doc. 40-6, p. 7 (Deposition pp. 29-30); Doc. 45, pp. 13-14; and Doc. 45-3, p. 2).** It is at this juncture that it becomes apparent that plaintiff has confused the RPAB and ARB and/or the distinction between a request for religious

7

accommodation pursuant to 20 Ill. Admin. Code § 425.110, and a grievance regarding the denial of such a request, *which is a separate and distinct procedural requirement*. In accordance with 20 Ill. Admin. Code § 425.120, any religious grievance may be grieved through the usual grievance procedures, which as previously explained, are set forth in Section 504. **(*See* Doc. 40-2, p. 13 (20 Ill. Admin. Code § 425.120)).**

Plaintiff initiated a second grievance on February 8, 2004, one day before the November 19, 2003, grievance was returned to him by the Administrative Review Board. **(*See* Doc. 40-2, p. 26; and Doc. 40-5, p. 7).** According to plaintiff's deposition testimony, the February 8th grievance was intended as the verification Chaplain Sutton required. **(Doc. 40-6, p. 7 (Deposition p. 29)).** The February 8th grievance is similar to the November 19th grievance, in that it alleges prison policies have denied him the right to practice his religion; it also takes issue with Chaplain Sutton's failure to give plaintiff a "status report" on the progress of his list of requested ritual items. **(Doc. 40-3, pp. 13-14).**

The counselor's February 18, 2004, response to plaintiff's February 8, 2004, grievance states: "Per Chaplain Sutton, your list will be sent to the Religious Practice Advisory Board in Spfld. for their decision. You should have sent him this list <u>before</u> you wrote a grievance." **(Doc. 40-3, p. 13).** Insofar as plaintiff intended to initiate the RPAB process, he achieved his goal, in that Chaplain Sutton was prompted to forward the list to the RPAB. Again, the counselor's advice is consistent with the aforementioned procedures and recognizes plaintiff's apparent confusion. In any event, plaintiff forwarded the grievance to a grievance officer on March 15, 2004, and the officer's recommendation was to deny the grievance because Chaplain Sutton had sent the list to the RPAB and was awaiting a decision. **(Doc. 40-3, p. 15).** On March

17, 2004, the chief administrative officer concurred with the recommendation to deny the grievance. **(Doc. 40-3, p. 15).** Again, it appears that the February 8, 2004, grievance was premature.

The November 19, 2003, grievance and the February 8, 2004, grievance were both denied by the chief administrative officer on March 17, 2004. **(Doc. 40-5, pp. 8-10; and Doc. 40-4, pp. 13-15).** On April 12, 2004, the ARB received an appeal of the denial of the November 19, 2003, grievance. **(*See* Doc. 40-5, pp. 3; and Doc. 40-5, pp. 8-11).** The November 19, 2003, grievance was denied on March 17, 2004, so plaintiff's April 12th appeal was timely filed. However, the ARB returned the grievance to plaintiff on May 17, 2004, because it was not timely, in that the grievance itself was not timely. **(Doc. 40-5, p. 11).** The grievance was initiated on November 19, 2003, but not submitted to a grievance officer until March 15, 2004, well outside the 60-day time frame prescribed by 20 Ill. Admin. Code § 504.810. At the institutional level the grievance was essentially deemed premature, in that plaintiff's list of religious items had been forwarded to the RPAB, but no recommendation had been issued by the RPAB. Similarly, the February 8, 2004, grievance was essentially deemed premature, in that plaintiff's list of religious items had been forwarded to the RPAB, but no recommendation had been issued by the RPAB.

Plaintiff asserts that on April 6, 2004, he mailed both the November 19th and February 8th grievances to the ARB. **(Doc. 45-3, p. 2).** However, there is no evidence to support that assertion. Regardless, pursuing a premature, procedurally flawed grievance through the entire administrative process does not constitute exhaustion. The rules governing the filing and prosecution of a grievance, including the appeal, must be followed to achieve exhaustion;

9

substantial compliance is insufficient. *Lewis v. Washington* **300 F.3d 829, 833-834 (7ᵗʰ Cir. 2002).**

Plaintiff indicates he thought that the time frame for pursuing the November 19ᵗʰ grievance was essentially stayed while his list of ritual items was being considered. **(*See* Doc. 45-3, p. 3).** Plaintiff asserts that the proper 60-day time frame for filing a grievance commenced on February 8, 2004, when he was "forced" to file a second grievance because he had not received a decision from Chaplain Sutton or the RPAB. **(*See* Doc. 45-3, p. 3).** Plaintiff notes that both grievances were submitted to a grievance officer on March 15, 2004, well within 60 days from February 8, 2004. **(*See* Doc. 45-3, p. 3).** Plaintiff argues that to construe the procedural rules otherwise would permit Chaplain Sutton to stall until the 60-day period had passed. **(Doc. 45-3, p. 3).** Plaintiff's own confusion about the RPAB and ARB procedures is not evidence that plaintiff's efforts to exhaust administrative remedies were improperly thwarted by the defendants or other prison officials. Plaintiff does not dispute that the RPAB, not Chaplain Sutton, had to review the list of ritual items, and he concedes that all inmates had to follow the IDOC procedures for securing permission to use the items on the list. **(Doc. 45, pp. 2-4).** Moreover, plaintiff fails to appreciate that he did not file a grievance regarding the RPAB's delay in issuing a recommendation. As the defendants observe, by not doing so, plaintiff himself denied the IDOC the opportunity to address the RPAB's delay and resulting withholding of ritual items.

## Recommendation

For the aforestated reasons, it is this Court's recommendation that defendants Rick Sutton, Julius Flagg, Mark Pierson, John Evans, Melody Ford and William Watts' motions for

summary judgment **(Docs. 40 and 43)** be granted, in that plaintiff Enoch Wilder failed to properly exhaust administrative remedies prior to filing this action. The complaint should be dismissed without prejudice.

**Submitted: January 25, 2008**

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **U. S. MAGISTRATE JUDGE**

**Notice of Response Deadline**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **February 11, 2008**. No extensions will be granted.