**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**ENOCH WILDER,**

**Plaintiff,**

**v.**

**RICK SUTTON, JULIUS FLAGG,**
**MARK PIERSON, JOHN EVANS,**
**MELODY FORD, and WATTS,**

**Defendants.** **04-cv-874-DRH**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

This matter comes before the Court on a Report and Recommendation ("the Report") submitted by Magistrate Judge Clifford J. Proud (Doc. 52). Based on the following, the Court **ADOPTS** the Report.

On November 30, 2004, Enoch Wilder, a prisoner housed at the Illinois River Correctional Center, filed suit against Defendants for deprivations of his civil rights that he claims occurred at Pickneyville Correctional Center pursuant to 42 U.S.C. § 1983 (Doc. 1). On August 15, 2006, the Court conducted its 28 U.S.C. § 1915A review of Wilder's complaint (Doc. 8). In that Order, the Court, based on the allegations in the complaint, set forth the following as the relevant facts surrounding Wilder's claims:

Plaintiff states that he was transferred to Pickneyville Correctional

> Center on January 10, 2003. At the time of transfer, he identified himself as a practitioner of the Wiccan religion. Plaintiff submitted "request slip after request slip" seeking a meeting with Defendant Sutton so that he might obtain the materials necessary for the practice of his religion. Plaintiff informed Defendant Flagg, Assistant Warden of Programs, that Defendant Sutton had not responded to his requests. Defendant Flagg told him to keep submitting requests. After a few more weeks of his requests being ignored, Plaintiff wrote an unspecified number of letters to Defendant Pierson, Chief Administrative Officer at Pickneyville Correctional Center, informing him of his desire to practice his religion and Defendant Sutton's failure to respond to his requests. Defendant Pierson did not respond in writing to Plaintiff's requests, but when Plaintiff saw him in person and asked him about his letters, Defendant Pierson told Plaintiff, "you must go through the Chaplaincy Department."
>
> Because Plaintiff believed he had no other recourse, on November 19, 2003, he began filing grievances. In response, he was informed that he needed to submit a documented list of necessary items to Defendant Sutton. Plaintiff did so, but that request was also ignored. Plaintiff later saw Defendant Sutton, asked about the requests, and was informed that "your religion is not allowed to be practiced at PCC." Defendant Sutton also told Plaintiff that his request[s] were being reviewed by Defendant Watts, Chief Chaplain of the Religions Practice Advisory Board in Springfield. After "a long period of time elapsed" without response from either Defendant Sutton or Defendant Watts, Plaintiff wrote a letter to Defendant Watts personally, asking that he be allowed to practice his religion. During that same time, Plaintiff was also seeking relief through the prison's grievance system. All grievances were denied for various reasons at the prison level and later by Defendant Evans and Defendant Ford at the Administrative Review Board.

(Doc. 8, ps. 2-3). Thereafter, Wilder filed an amended complaint on January 3, 2007 (Doc. 21). Wilder's Amended Complaint arises out of the same facts stated above and alleges that Defendants discriminated against him on the basis of his religion; and denied him the opportunity to practice his religion in violation of the First Amendment, the Religious Land Use and Institutional Persons Act, and Illinois Law.

Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Clifford J. Proud submitted a Report on January 25, 2008 (Doc. 52). The Report recommends that the Court grant Defendants' motions for summary judgment (Docs. 40 & 43) and dismiss without prejudice Plaintiffs cause of action for failure to exhaust administrative remedies. The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" within ten days of service of the Report. On February 13, 2008, Wilder filed objections to the Report (Doc. 53).

Since timely objections have been filed, this Court must undertake *de novo* review of the Report. **28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers,* 965 F.2d 298,301 (7th Cir. 1992)**. The Court may "accept, reject or modify the recommended decision." ***Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999)**. In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. ***Id.*** Keeping these principles in mind, the Court turns to Wilder's objections.

It is significant to note that Wilder is proceeding *pro se* herein. The pleadings of *pro se* litigants should not be held to the same stringent standards as pleadings drafted by formally trained lawyers; instead they must be liberally construed. ***See Kyle II v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999)(citing *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988)(pro**

**se complaints/pleadings are to be liberally construed.)) *See also Cruz v. Beto*, 405 U.S. 319, 322 (1972)**.

## II. Analysis

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies as required by section 1997e(a), is a condition precedent to suit. ***See Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)**. Further, exhaustion is necessary even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages, ***Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)**, or if the prisoner believes that exhaustion is futile, ***Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)**. "The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins." ***Cannon v. Washington,* 418 F.3d 714, 719 (7th Cir. 2005) (per curiam)**. The Supreme Court has also noted that corrective action taken in response to a grievance might satisfy the prisoner, thus obviating the need for the litigation, or alert prison authorities to an ongoing problem that they can correct. ***Porter,* 534 U.S. at 524-25, 122 S.Ct. 983.**

The Supreme Court has stated that so long as the administrative authority has the ability to take *some* action in response to the complaint (even if not

the requested action), an administrative remedy is still "available" under the PLRA. ***Booth,* 532 U.S. at 741, 121 S.Ct. 1819; *see also Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001) (inmate must exhaust prison remedies if the administrative body (1) was empowered to consider the complaint and (2) could take some action in response to it)**. Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting. ***Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004)**. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. ***Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.")**.

The Illinois grievance process for prisoners usually includes five levels of review. A prisoner first submits a grievance to a counselor. **20 Ill. Admin. Code § 504.810(a)**. If the prisoner is not satisfied with the counselor's resolution of the complaint, he may then submit a formal grievance to the prison's grievance officer. **20 Ill. Admin. Code § 504.810(a) and (b)**. The grievance officer then reviews the grievance and forwards his recommendation to the warden. **20 Ill. Admin. Code**

**§ 504.830(d)**. The warden makes the final decision at the institutional level.

If the prisoner is not satisfied with the warden's response, he may file an appeal to the Director. **20 Ill. Admin. Code § 504.850(a)**. Appeals to the Director are to be addressed to the ARB. The Director is deemed to have referred the matter to the ARB, which in turn submits its recommendation to the Director. **20 Ill. Admin. Code § 504.850(b) and (f)**. The Director issues the Department's final decision. With certain exceptions, a prisoner housed in a facility other than the one where the incident giving rise to the complaint occurred files his appeal directly with the ARB. **20 Ill. Admin. Code § 504.870(a)(3)**. Grievances must usually be filed within sixty days of the incident giving rise to the complaint, but the ARB reviews untimely grievances that include an explanation of good cause for the untimeliness. **20 Ill. Admin. Code § 504.810(a)**.

According to the Amended Complaint, Wilder was transferred to Pickneyville Correctional Center on January 10, 2003. At this time, Wilder orally and through the "request slip" attempted to speak to Chaplain Sutton regarding the practice of his religion. According to Wilder, these attempts were ignored, so on November 19, 2003, he submitted a grievance to the counselor regarding religious issues. The record reveals that this grievance was received by the counselor on December 1, 2003. On December 2, 2003, the counselor responded the following to the grievance: "Per Chaplain Sutton, you must provide a complete list of what you need along with verification (documentation) in order for these items to be used in

your worship."

Thereafter, Wilder received a letter dated December 22, 2003, from the Rowan Tree Church, listing various items "considered very desirable," "very important," or "desirable" in religious ceremonies. (Doc. 45-2, p. 10.) Wilder submitted this letter to Chaplain Sutton, who forwarded the list to the Religious Practice Advisory Board (RPAB). The RPAB did not respond.

On February 9, 2004, the Administrative Review Board received Wilder's November 19, 2003 grievance regarding religious issues. This grievance was returned to Wilder due to his failure to comply with institutional procedure.[1] On April 12, 2004, the Administrative Review Board received the appeal of the denial of the November 19, 2003 grievance along with the Grievance Officer's Report. That grievance was not addressed because it was "Not submitted in the timeframe outlined in Department Rule 504: therefore, this issue will not be addressed further. Grievance dated 11/19/03 by Inmate G.O. received 3/15/04" (Doc. 40-5; p. 11).

On February 8, 2004, Wilder submitted another grievance. This grievance is similar to the November 19, 2003 grievance in that it alleges that prison policies have denied him the right to practice his religion and that Defendant Sutton failed to give him a "status report" on the progress of his list of requested items. On

[1]The Report states that the grievance was being returned for additional information required. Specifically, the additional information required is: "Use the Committed Person's Grievance Report, DOC 0047 (formerly DC 5657), including the Grievance Officer's and Chief Administrative Officer's response to appeal; and Provide a copy of the Committed Person's Grievance, DOC 0046 (formerly DC 5657) including the counselor's response if applicable)." (Doc. 40-5, p. 7).

February 18, 2004, the counselor responded to Wilder's grievance stating: "Per Chaplain Sutton, your list will be sent to the Religious Practice Advisory Board in Spfld. for their decision. You should have sent him this list before you wrote a grievance." (Doc. 40-3, p. 13). Wilder then forwarded the grievance to a grievance officer on March 15, 2004 and the grievance officer recommended denial of the grievance because Chaplain Sutton had sent the list to the RPAB and was awaiting decision. (Doc. 40-3, p. 15). On March 17, 2004, the Chief Administrative Officer agreed with the recommendation to deny the grievance. It appears that this grievance was premature too.

With regard to the Report and Wilder's objections, the Court determines that Magistrate Judge Proud made a correct analysis and that Wilder's objections only demonstrate a misunderstanding of the law. Wilder's objection merely takes umbrage with the Report. Plaintiff maintains that he attempted to exhaust his administrative remedies before filing his complaint but that his attempts were thwarted by Defendant Sutton at the beginning of the grievance procedure and by Defendant Ford.

Based on the record before the Court, it appears that Wilder did not exhaust his administrative remedies prior to filing suit. The ARB determined that Wilder did not properly file his grievances. The record reveals that Wilder's grievances were premature and that he did not properly follow the required procedures. Wilder does not point to evidence in the record to substantiate his contention that prison officials prevented him from filing grievances. Furthermore,

Plaintiff did not file a grievance regarding the Religious Practice Advisory Board's delay in issuing a recommendation concerning his request for religious materials. Thus, the Court must dismiss without prejudice Wilder's cause of action for failure to exhaust administrative remedies.

## III. Conclusion

Accordingly, the Court **ADOPTS** the Report (Doc. 52). The Court **GRANTS** Defendants' motions for summary judgment (Docs. 40 & 43). The Court **DISMISSES without prejudice** for failure to exhaust administrative remedies Plaintiff's cause of action. The Court will close the file.

**IT IS SO ORDERED.**

Signed this 22nd day of February, 2008.

/s/ DavidRHerndon

**Chief Judge**
**United States District Court**